**Carl Eugene RUDD, Respondent,**

v.

**Thomas A. DAVID, Director of Revenue, State of Missouri, Appellant.**

**No. 54168.**

Supreme Court of Missouri, Division No. 2.

Sept. 8, 1969.

William B. Morgan, Bradley, Noble, Morgan, & Baker, Kennett, for respondent.

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for appellant.

BARRETT, Commissioner.

On June 27, 1968 the Director of Revenue notified Carl Eugene Rudd of Kennett that because of four reported convictions for moving traffic violations in a period of eighteen months he had accumulated eight points and therefore his driving privilege was suspended for a period of thirty days. Upon receipt of the notice Rudd, pursuant to § 302.311, RSMo 1959, V.A.M.S., appealed the order of suspension to the Circuit Court of Dunklin County and that court invalidated the order and removed six of the points assessed against Rudd's driving record. Six of the eight points were assessed for three separate convictions of "no operator's license" and the circuit court was of the view that "Plaintiff's failure to obtain a valid driver's license is not a 'traffic violation' or 'moving violation'" within the meaning of the statute and therefore could not be assessed as points leading to the suspension of his driving privilege. The court also found that the Director was "estopped from suspending plaintiff's operating privileges prior" to the giving of a notice. The Director of Revenue, a state officer within the meaning of this court's jurisdiction, (McIntyre v. David, Mo., 431 S.W.2d 216) has appealed and contends that the trial court was in error in both its rulings and that the judgment of the circuit court should be reversed and the order of suspension reinstated.

It should be noted at the outset that Rudd does not question the fact of the four convictions, the last one a city court

conviction for "careless and imprudent driving" and the other three, January 19, 1967, June 1, 1967 and October 11, 1967 for "no operator's license." Nor does he question the fact that the courts in which he was convicted properly forwarded to the Director of Revenue a record of his convictions "for a violation of this chapter or for any moving traffic violation." RSMo Supp. § 302.225, V.A.M.S.

After authorizing a point system and providing the initial point value for certain specified violations the statutes provide, RS Mo 1959 Supp. § 302.304, V.A.M.S.:

"The director shall:

(1) Notify by ordinary mail any operator or chauffeur of the point value charged against his record when the record shows four or more points have been accumulated in a twelve-month period.

(2) Suspend the operating privileges of any person whose driving record shows he had obtained or accumulated eight points in eighteen months. The time of suspension shall not be less than thirty days nor more than ninety days. * * *."

As to notice, attached to Rudd's petition to the circuit court as exhibit one is a copy of the Director's suspension notice. That notice after listing a conviction on January 19, 1967 and an assessment of 2 points and a second conviction on June 1, 1967 and another assessment of 2 points, then a total of four points, the suspension order recites "07/26/67 warning"; following these entries are the convictions of October 11, 1967 and May 1, 1968, the assessment of four more points and on June 27, 1968 "suspension." Despite this clear record of "warning" the prosecuting attorney of Dunklin County and Rudd's attorney entered into a "stipulation of facts" number 6 of which recites "The defendant did not notify plaintiff of the point value charged against plaintiff's record when such record showed that four or more points had been accumulated in a twelve month period." Upon the basis of this stipulation the court found that the

Director was "estopped from suspending plaintiff's operating privileges."

In the absence of a further stipulation or evidence explaining away or accounting for the "warning" in the very order sought to be set aside, the stipulation of no notice is rather astonishing if not meaningless. In view of the general unpopularity of the doctrine of estoppel as applied to state agencies and law enforcement (State ex rel. Cainsville Reorganized School Dist. etc. v. Tomes, Mo.App., 299 S.W.2d 892, 897; State, at Inf. of Taylor ex rel. Schwerdt v. Reorganized School Dist. R. 3, Mo.App., 257 S.W.2d 262, 28 Am.Jur.2d Sec. 124, p. 787), the finding at best is but tenuously supported. And respondent's counsel does not attempt to support the specific finding of estoppel and urges, citing only the statute, Sec. 302.304, that the court was correct in ruling that the Director could not suspend his driving privileges when he had failed to give the warning notice required by the statute. In this connection there is not involved here the necessity of notice and a hearing before the revocation of a driver's license (Annotations 10 A.L.R.2d 833), the order of the Director, as attempted by this very proceeding, is subject to judicial review. Blydenburg v. David, Mo., 413 S.W.2d 284, 290. The point system here (Sec. 302.302) is a legislative evaluation of the force and effect of convictions for traffic violations (Jones v. Kirkman, Fla., 138 So.2d 513, 515) and once the specified number of points are accumulated the Director has no discretion. Commonwealth v. Virnelson, 212 Pa.Super. 359, 243 A.2d 464. Compare City of St. Louis v. Mosier, Mo.App., 223 S.W.2d 117. Any penalty or hardship resulting from revocation or suspension of a driver's license is but incidental because the purpose of the statutes is the protection of the public not primarily the punishment of the offender. Barbieri v. Morris, Mo., 315 S.W.2d 711; Durfee v. Ress, 163 Neb. 768, 81 N.W.2d 148. Albeit the provision for notice after the accumulation of four points in a twelve-month period is not

without its difficulties. There are four twelve-point violations and obviously for those convictions and infractions there could be no four-point warnings. There are two six-point infractions and it is conceivable that in one day or in one episode a motorist could incur more than four points out of three and two point violations thus not allowing a supposed time in which to reform one's driving habits. There is no claim here of being misled or of reliance and there is no demonstration of injury to Rudd from the mere failure to receive an advisory or warning notice or any other factor giving rise to an equitable estoppel. "The net of this situation is that the plaintiff by his violations of the law has created a record upon which the state in the exercise of its police power has determined that his driver's license shall be * * * suspended." Durfee v. Ress, Neb., 81 N.W. 2d 1. c. 150. In the circumstances of this record the failure to give a warning notice, if there was such a failure, is not fatal to the suspension order—"traffic violations in a driver's record have been held to contribute to a point total under such a system, even where the driver was not warned with respect to each violation as to the possible loss of his license." Annotation 5 A.L.R.3d 690, 693.

 Three of Rudd's convictions, six points, were for the same or repeated offense of operating a motor vehicle without a license (RSMo 1959 Supp. Sec. 302.302, V.A.M.S.) and the question is whether these constitute "moving" or "traffic" violations within the meaning of the statute. And the posing of the question all but answers itself. Rudd argues that the misdemeanor punishment for driving without a license, a jail sentence not exceeding one year (RSMo 1959 Supp. Sec. 302.321, V.A. M.S.), indicates a legislative intention that there is to be no other penalty and that therefore points may not be assessed toward suspension of license for these particular violations of the law, §§ 302.020; 302.321. In the first place, any violation and conviction of "anything (is) required or (is)

prohibited or (is) declared to be unlawful" in Chapter 302 is a misdemeanor. RSMo 1959, Sec. 302.340, V.A.M.S. And as indicated in connection with notice, the argument is contrary to the generally stated purpose of the point system "as regards suspension or revocation of driving licenses have generally been regarded by the courts as not being for the purpose of punishment, but instead for the purpose of increasing public safety on highways." Annotation 5 A.L.R.3d 1. c. 693, 694.

It is urged that the legislature separately dealt with failure to obtain a license, Rudd calls these "non-rules of the road," and so it is argued that there was no legislative intent to include such offenses within the terms "moving" or "traffic" violations. But the six points here were assessed under this provision: "The initial point value is as follows: (1) Any moving violation of a state law or county or municipal traffic ordinance not listed in this section, other than a violation of vehicle equipment provisions * * * 2 points." RSMo 1959 Supp. Sec. 302.302(1), V.A.M.S. And another section defines a "moving violation" as "that character of traffic violation where at the time of violation the motor vehicle involved is in motion." RSMo 1959 Supp. Sec. 302.010(10), V.A.M.S. In State v. Joiner, 77 Ohio App. 298, 66 N.E.2d 161, the question was whether driving while a license was suspended was a law "relating to reckless operation" of an automobile. The court pointed to the juxtaposition of the statutes, the one making it a misdemeanor to drive under a suspended license and the other empowering a suspension in certain circumstances, and concluded, "Certainly, the power to suspend for speeding has relation to reckless driving and, if so, the power to enforce the suspension has equal relevancy." Here authenticated copies of the three judgments of conviction were not placed in the record and the circumstances of Rudd's three offenses are not known. He was, no doubt, prosecuted and convicted of violating this law: "Any person whose operator's (an operator is "every person * * * who is

in actual physical control of a motor vehicle upon a highway") RSMo 1959 Supp. Sec. 302.010(13), V.A.M.S. license * * * has been canceled, suspended or revoked as provided in this chapter, and *who drives any motor vehicle upon the highways of this state while such license* or privilege *is* canceled, *suspended* or revoked, *is guilty of a misdemeanor."* RSMo 1959 Supp. Sec. 302.321, V.A.M.S. And so it must have been that Rudd was operating or driving a motor vehicle and he did so on three occasions while his "privilege" to do so was under suspension. As the Texas court said, "We cannot agree with appellant's second point wherein he contends that the offense 'driving without lights' did not constitute a moving violation in contemplation of Art. 6687b, Sec. 22(b) V.A.C.S. We think that Art. 6710d, Sec. 108(a) and Sec. 143, V.A.C.S. sufficiently define it to be a misdemeanor for a person to drive or move a vehicle at certain times without the same being equipped with sufficient lights to render the vehicle discernible." Miller v. Texas Dept. of Public Safety, Tex.Civ.App., 375 S.W.2d 468, 1. c. 473. In short, by any definition, driving a motor vehicle without a valid driver's license, or as stipulated "no operator's license," is a moving traffic violation within the meaning of the point system.

For the reasons indicated the judgment is reversed and the cause remanded with directions to reinsta'.e the Director of Revenue's order suspending Rudd's license for a period of 30 days.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

DONNELLY, P. J., FINCH, J., and HOLMAN, Alt. J., concur.

MORGAN, J., not sitting.