Paul C. Wilson, Judge,
dissenting
The St. Peters ordinance provides that in “no case shall points be assessed against any person, pursuant to section 302.302, RSMo, for a conviction of a violation of the City Traffic Code detected through the automated red light enforcement system.” But running a red light is a “moving violation” whether it is proved by an automated camera or the proverbial station wagon full of unimpeachable eyewitnesses. As a result, the principal opinion is correct in holding that the “no points” provision of the City’s ordinance is void because it conflicts with the requirement in section 302.302.1(1) that two points be assessed for any ordinance violation that qualifies as a “moving violation.” I also agree (reluctantly) there is no basis in the record to hold that the City would not have enacted this ordinance if it had known the “no points” provision would be void. Accordingly, I agree with the principal opinion that the rest of the ordinance (aside from the “no points” provision) remains enforceable.
I am compelled to write separately, however, because the principal opinion refuses to abide by the sound conclusions it reaches. Even though the principal opinion concludes that the City’s ordinance (aside from the “no points” provision) is enforceable, it refuses to enforce either the ordinance or section 302.302 in this case. Instead, it affirms the trial court’s dismissal of Roeder’s prosecution — not because of any defect in the ordinance — but because “notions of fairness” do not permit Roeder to be assessed points for her violation.
The question of whether to assess points for an ordinance violation is determined solely by section 302.302. This Court has no more authority to override that statute than does the City of St. Peters. If the City’s ordinance is enforceable — and the principal opinion holds it is — the responsibility to assess points according to section 302.302 for violations of that ordinance rests solely with the director of the department of revenue. That function is both automatic and ministerial. Rudd v. David, 444 S.W.2d 457, 459 (Mo. 1969) (assessment of points under section 302.302 and revocations under section 302.304 are ministerial duties, and the director has no discretion to depart from these statutory mandates). Just as a municipality cannot compel the director to ignore the provisions of section 302.302 on an ordinance-by-ordinance basis, this Court cannot compel the director to do so on a case-by-case basis. Accordingly, I respectfully dissent.
There are two types of challenges to municipal ordinances. The first challenge is that the municipality had no authority to enact the ordinance, either because the municipality acted outside the scope of its *557 delegated authority or because it exercised that authority in a manner prohibited by the state or federal constitution. City of St. Louis v. Evraiff, 301 Mo. 231, 256 S.W. 489, 494 (1923). Here, there is no doubt that the City has authority to enact this ordinance in the exercise of its police power. Similarly, the ordinance does not violate any substantive prohibition in the state or federal constitutions. Accordingly, the City’s ordinance is not subject to the first type of challenge.
The second type of challenge is that a municipal ordinance conflicts with state law, i.e., that it permits what state law prohibits or prohibits what state law permits. Vest v. Kansas City, 355 Mo. 1, 194 S.W.2d 38, 39 (1946). The conflicting municipal ordinance is valid in the sense that the municipality acted with authority and not in a manner prohibited by the state or federal constitution, but it is void because the “powers granted a municipality must be exercised in a manner not contrary to the public policy of the state and any provisions in conflict with prior or subsequent state statutes must yield.” Morrow v. City of Kansas City, 788 S.W.2d 278, 281 (Mo. banc 1990). See also McCollum v. Dir. of Revenue, 906 S.W.2d 368, 369 (Mo. banc 1995) (“If, however, a municipal ordinance conflicts with a general law of the state, it is void”).
Here, the principal opinion holds that the “no points” provision of the City’s ordinance conflicts with state law. I agree. Section 302.302 requires the director of revenue to assess two points for any ordinance violation that qualifies as a “moving violation” under section 302.010(13). The “no points” provision of the City’s ordinance, on the other hand, purports to prohibit the director of revenue from assessing points for certain ordinance violations (including running a red light) if the violation is proved by an automatic camera. Because this conflict must be resolved in favor of state law, the “no. points” provision of the City’s ordinance is “void and unenforceable ab initio.” Armco Steel v. City of Kansas City, 883 S.W.2d 3, 7 (Mo. banc 1994).
The only question remaining is whether the balance of the City’s ordinance is enforceable even though the conflict between the “no points” provision of the ordinance and the “two points” provision of section 302.302 renders that part of the ordinance void. “The general rule is that where an ordinance consists of several distinct and independent parts, some of which are void because in contravention of a state statute, this does not affect the validity of other independent provisions of the ordinance.” State ex rel. Hart v. City of St. Louis, 356 Mo. 820,204 S.W.2d 234, 240 (1947).[1] The remaining provisions of an ordinance will not be given effect, however, if this Court is convinced that the ordinance would not have been enacted without the conflicting provisions. See Pearson v. City of Washington, 439 S.W.2d 756, 762 (Mo. 1969) (“remainder of the ordinance should not be stricken down as ‘void’ unless it may be found judicially that the City Council would not have passed the entire enactment if it had known of such invalidity.”).
As the principal opinion points out, the City’s position on this question is stated in the ordinance itself:
*558 If any ... provision of this Ordinance shall, to any extent, be held to be invalid or unenforceable, the remainder shall be valid in all other respects and continue to be effective and each and every remaining provision hereof shall be valid and shall be enforced to the fullest extent permitted by law....
Notwithstanding this boilerplate language, I suspect that the “no points” provision was essential to the realpolitik of this ordinance, i.e., to striking a balance between the desire to raise revenues and the risk of outraging its citizens. Suspicions aside, however, there is no evidence in this record to support a conclusion that the City would not have enacted this ordinance if it had known that the “no points” provision would be void ab initio. Accordingly, I agree with the principal opinion that the balance of the City’s ordinance remains enforceable even without the “no points” provision that is rendered void by its conflict with section 302.302.
After reaching this conclusion, the disposition of the case should have been straightforward. The jury found Roeder guilty of running a red light. The trial court refused to give effect to that verdict solely because it believed the conflict between the “no points” provision of the ordinance and section 302.302 rendered the entire ordinance unenforceable. The principal opinion properly rejects that conclusion and holds that the remainder of the ordinance is enforceable. Accordingly, the principal opinion should have remanded the case to the trial court to enter judgment in accordance with the jury’s verdict. It refuses to do so, however.
The principal opinion holds that — even though it is proper to separate the “no points” provision from the balance of the City’s ordinance and enforce the latter even though the former is void — it will enforce the remainder of the City’s ordinance only in the future.[2] As to Roeder, the principal opinion affirms the dismissal of the charge against her on the ground that the void “no points” provision of the ordinance cannot be separated from the remainder and, therefore, the entire ordinance is unenforceable. There is no precedent for a prospective-only application of the principles of Hart and Pearson, and the stated reasons for the principal opinion’s conclusion that the remainder of the City’s ordinance is enforceable against some people but not others are not sufficient to justify that approach.
The principal opinion asserts that the ordinance provides a “lesser punishment” for a moving violation than is required by state law, and that Roeder lacked “fair notice” of this consequence at the time of her violation. This is incorrect. More than 40 years ago, this Court rejected the contention that assessing points for a traffic violation is a punishment imposed for *559 that violation. “The point system here (Sec. 302.302) is a legislative evaluation of the force and effect of convictions for traffic violations [.] ” Rudd, 444 S.W.2d at 459 (emphasis added) (citing Jones v. Kirkman, 138 So.2d 513, 515 (Fla.1962)) (“The so-called ‘point system’ is merely a legislative evaluation of convictions of traffic violations in terms of penalty points which, when accumulated in sufficient quantity during a stated period, lead to suspension of a driver’s license.”). Indeed, even the ultimate revocation or suspension for accumulated points is not considered “punishment” for the prior offenses: “Any penalty or hardship resulting from revocation or suspension of a driver’s license is but incidental because the purpose of the statutes is the protection of the public not primarily the punishment of the offender.” Rudd, 444 S.W.2d at 459 (emphasis added).[3]
In addition to Rtidd, which rejects the argument that the assessment of points is part of the “punishment” imposed for a traffic violation, such an argument also is inconsistent with the statutory context of section 302.302. For example, if assessing points is part of the “punishment” imposed for a traffic violation, the director of revenue could not assess points for violations that occurred before section 302.302 was enacted. Section 302.308, however, plainly requires the director to do so. See § 302.308 (director to assess points based on violations occurring up to six months before date of enactment). See also Barbieri v. Morris, 315 S.W.2d 711, 714 (Mo. 1958) (finding, under a predecessor statute, that the Legislature intended director to suspend licenses based on convictions that occurred prior to enactment and rejecting the claim that this violated the constitutional ban on retrospective laws). By the same token, this state cannot impose “punishment” for violations that occur in other states, but section 302.160 plainly authorizes the director of revenue to assess points for such violations. Rather than adopt a construction that subjects sections 302.308 and 302.160 to considerable constitutional doubt, the Court should hold — as it did in Rudd — that the General Assembly intended the points system to be a regulatory evaluation of a driver’s collective traffic violations and not a method of punishing any (or all) of those violations. Rudd, 444 S.W.2d at 459.
Shorn of the misperception that the director of revenue’s obligation to assess two points under section 302.302 is part of the “punishment” imposed for violating the City’s ordinance, there is no justification for the principal opinion’s refusal to act in accordance with its conclusions. If, as the principal opinion holds: (a) the “no points” provision of the City’s ordinance is void; but (b) the balance of -the ordinance is enforceable, then there is no excuse for the Court not to enter judgment in accordance with the jury’s verdict.[4]
Such a judgment would not result in any unfairness to Roeder. The jury found beyond a reasonable doubt that she ran this red light. She does not claim that she was relying on the “no points” provision of the ordinance — or on the identical (and identically erroneous) statement made to her in the notice — when she did so. Even if she had, this argument would fail because section 302.302 was in effect at the time of her violation, and she is presumed to have knowledge of it. Section 302.302’s continu *560 ous applicability well in advance and throughout the events of this case soundly refutes the principal opinion’s suggestion that assessing points would impose an increased penalty or a new obligation, duty, or disability with respect to Roeder’s conduct, or that she lacked fair notice of the consequences thereof. See Principal Opinion at 16. Moreover, if her violation had been observed by a police officer or other eyewitness (in addition to the automated system), Roeder could have been prosecuted under the regular traffic ordinance and there would be no question that such a violation would result in points against her license. Finally, it is not as though Roe-der relied on the “no points” provision in the ordinance (or in her notice) in choosing to plead guilty. She chose to plead not guilty and did so on the basis that section 302.302 trumps the City’s ordinance and requires that points be assessed.
Accordingly, there is no basis for dismissing Roeder’s prosecution or otherwise failing to give effect to the jury’s verdict that she violated the City’s ordinance.[5] The case should be remanded for entry of judgment. When that judgment is entered, the director of revenue must assess the points required by section 302.302. The director has no discretion in the matter, and neither the City of St. Peters nor this Court has any authority to prevent the director from fulfilling this ministerial duty.

. Section 1.140, by its own terms, has no bearing on the issue of whether a void provision of a municipal ordinance is sufficiently separable from the remainder of the ordinance to allow the other provisions to be enforced. ' See § 1.140 (“The provisions of every statute are severable”) (emphasis added). The principle applied in Hart needs no such authority, however, as it has been applied by this Court nearly as long as this Court has been evaluating local ordinances. See, e.g., City of St. Louis v. St. Louis R. Co., 89 Mo. 44, 1 S.W. 305, 306 (1886).

. The principal opinion's promise to enforce the remainder of the City's ordinance “prospectively” is a hollow one. The City's website states:
The City of St. Peters has reached an agreement with Redflex, the red light camera vendor, to permanently terminate the City's contract effective July 1, 2015. City staff negotiated with the company to permanently terminate the contract, with the Board of Aldermen passing a resolution directing staff to negotiate to end the contract and the red light camera program in light of the wishes of voters in the November 2014 election.
See http ://w w w.stpetersmo. net/red-light-cameras.aspx (last viewed August 13, 2015) (a copy has been placed in the Court file). The election referred to is the 2014 adoption of an amendment to the St. Charles County Charter banning the use of so-called "red light cameras” in all incorporated and unincorporated areas of the county. This ordinance is being challenged by some of the municipalities affected, including St. Peters.

. Notably, this Court's characterization of point as "incidental” answers due process and retrospectivity concerns, whether they are described as punishments or "direct consequences.”

. The alternative grounds for affirming the trial court asserted by Roeder in her brief (see Princ. Op. at p. 18, n. 12), fall short of justifying dismissal of the charge against her.

. I am inclined to agree with Judge Stith that, to the extent the ,City construes the ordinance to contain a presumption that the owner of the car was the driver at the time the violation was photographed, such a presumption is unconstitutional. See City of Moline Acres v. Brennan, — S.W.3d at -(Case No. SC94085) (Slip Op. at 10-17). However, an unconstitutional presumption is not a sufficient basis on which to affirm the dismissal of an information. Id., — S.W.3d at-(Slip Op. at 16-17). The dismissal might have been affirmed on the alternative ground that the Notice to Roeder failed to state facts showing probable cause that she violated the ordinance, id., — S.W.3d at —-(Slip Op. at 19-21), but Roeder did not make this argument in the trial court or on appeal.