STATE of Missouri at the relation of Irwin H. SCHMITZ, Plaintiff-Appellant,

v.

CITY OF ST. LOUIS, and John Poelker, Mayor of the City of St. Louis and William J. Wilson, Director of Department of Streets of the City of St. Louis, Defendants-Respondents.

No. 38120.

Missouri Court of Appeals,
St. Louis District,
Division Four.

April 5, 1977.

Motion for Rehearing or for Transfer Denied May 24, 1977.

Application to Transfer Denied July 11, 1977.

John D. Connaghan, St. Louis, for plaintiff-appellant.

Jack L. Koehr, City Counselor, Judith Anne Ronzio, Asst. City Counselor, St. Louis, for defendants-respondents.

NORWIN D. HOUSER, Special Judge.

Irwin H. Schmitz, a resident of the Shaw District, an area in the City of St. Louis bounded by Shaw, Tower Grove, Magnolia and Grand Avenues, sued the city, mayor and director of the department of streets, to have an ordinance declared void, and to secure a judicial declaration that barriers erected at designated intersections constitute a nuisance and to have the court order their removal and restore previously existing traffic regulations in the area, etc. Eight other residents of the area intervened as parties plaintiff. The court found against plaintiffs. Plaintiff Schmitz has appealed.

The trial court's findings of fact, incorporated in appellant's brief as his statement of facts and agreed to by respondents, cannot be improved upon and are adopted by this Court as the facts of the case, as follows:

On or about March 1, 1975, defendant William J. Wilson, the Director of the Department of Streets of the City of St. Louis, in furtherance of a comprehensive traffic pattern program for the area bounded by Shaw, Magnolia, Tower Grove, and Grand Avenues, erected barricades on certain thoroughfares within the area and designated certain streets for one-way traffic. This action was taken by the director pursuant to Section 821.060, Revised Code of the City of St. Louis, as amended by Ordinance No. 56455, approved March 7, 1973. As amended, the ordinance provided that any emergency and temporary regulations made by the traffic commission would remain in full force and effect until modified or set aside by the commissioner or by the Board of Aldermen.

Plaintiffs, residents of the affected area, filed an action seeking, in effect, to have the barricades removed and the one-way street designations set aside, to have the ordinance declared unconstitutional as a delegation of legislative authority and to permanently enjoin the City from enforcing the traffic pattern program. The original petition alleged that § 821.060 as amended, constituted an unconstitutional delegation of legislative power to the Director of the Department of Streets and that the action taken pursuant thereto was unlawful and further alleged that plaintiffs were caused to travel greater distances at great expense thereby endangering their lives.

On November 21, 1975, the Board of Aldermen of the City of St. Louis enacted Ordinance 57087, entitled "An ordinance pertaining to the establishment and changes in one-way street patterns in the Shaw Neighborhood area and authorizing the Director of Streets to install barricades to effect the closing and/or diverting of traffic at certain intersections and containing an emergency clause." The ordinance was signed and approved by the Mayor on December 11, 1975. It covered the same geographical area and adopted most of the regulations of the Director's comprehensive traffic pattern program, although certain one-way streets were eliminated as were some of the barricades. However, the ordinance expressly authorized the installation of barricades at the intersection of Flora Place and Tower Grove Avenue to restrict the flow of vehicular traffic and the installation of traffic diverters at two intersections to control the direction of vehicular traffic.

The barricades and traffic diverters consist of metal posts imbedded in the surface of the street linked by heavy chain and they effectively prevent the passage of vehicular traffic. The comprehensive traffic pattern plan was adopted after several public meetings, and modifications of the plan were made from time to time. At the time of the Circuit Court's ruling, all traffic signs, signals, devices, barricades, one-way streets, and regulations in effect in the pertinent geographical area were in conformity with the specifications of Ordinance No. 57087.

Subsequently, plaintiff Schmitz filed his second amended petition, alleging that Ordinance No. 57087 was in direct violation of § 229.030, RSMo 1969 and that the enactment of said ordinance was in excess of the constitutional limitation of power granted to the City of St. Louis by Article VI, § 19(a) of the Missouri Constitution, and in excess of the power granted to the City of St. Louis by § 304.120, RSMo 1969, and that the barricades authorized by said ordinance constituted a nuisance per se, and should be removed.

Thereafter, plaintiffs and defendants filed motions for summary judgment, each side praying for judgment as a matter of law, as there was no genuine issue as to any material fact.

The Court denied plaintiffs' motion for summary judgment, and sustained defendants' motion for summary judgment, and issued its findings of fact, conclusions of law denying plaintiffs any relief.

Section 229.030, RSMo 1969 provides: "Public roads shall be cleared of all obstructions therein that hinder or interfere with travel or traffic thereon, * * *."

Section 304.120 2., RSMo 1969 provides: "Municipalities, by ordinance, may: (1) Make additional rules of the road or traffic regulations to meet their needs and traffic conditions; (2) Establish one-way streets and provide for the regulation of vehicles thereon; * * *."

Section 82.190, RSMo 1969 provides: "Such city shall have exclusive control over its public highways, streets, avenues, alleys and public places, and shall have exclusive power, by ordinance, to vacate or abandon any public highway, street, avenue, alley or public place, or part thereof, any law of this state to the contrary notwithstanding."

Section 71.010, RSMo 1969 provides: "Any municipal corporation in this state, whether under general or special charter, and having authority to pass ordinances regulating subjects, matters and things upon which there is a general law of the

state, unless otherwise prescribed or authorized by some special provision of its charter, shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the state law upon the same subject."

The first question is whether the ordinance violates § 229.030. Appellant contends that by passing § 229.030 the General Assembly preempted the whole field relating to obstruction of public roads and has eliminated any action by municipal governments on this subject, and therefore as long as an area is a public road no obstruction can be placed thereon which will interfere with or hinder traffic; that the barricades not only interfere with and hinder but completely eliminate traffic over and along the points where erected, and that these barricades may not be approved on the ground that they are traffic control devices like traffic islands and diverters (which may be "negotiated around" and which facilitate traffic) because they eliminate traffic and completely prevent passage of automobiles.

■ The barricades are obstructions and they not only hinder and interfere with but also literally eliminate traffic at the points where they are erected. In determining whether the ordinance violates § 229.030, however, we are not confined to a literal, mechanistic interpretation of the statute without regard to other pertinent statutory and charter provisions. Our duty is to ascertain the legislative intent from a consideration of all applicable statutes relating to the subject. The City of St. Louis is empowered by Article I, Section 1(14) of its charter "To establish * * * streets * * * and regulate the use thereof." Subsection 35 of Article I, Section 1 thereof provides: "Incidental powers—To exercise all powers granted or not prohibited to it by law or which it would be competent for this charter to enumerate." Section 82.190, applicable to charter cities, of which the City of St. Louis is one, provides that the city shall have exclusive control over its public streets, avenues and places. Section 304.-120(2) gives the city broad powers of regulation over the streets and traffic thereon

and specific power to make additional rules of the road or traffic regulations to meet the city's needs and traffic conditions and to establish one-way streets and regulate traffic thereon. "It is abundantly clear that the City of St. Louis has full police power to regulate and control all traffic on its streets * * *." *Automobile Club of Missouri v. City of St. Louis,* 334 S.W.2d 355, 363[9] (Mo.1960). In the exercise of these powers the city has established a comprehensive traffic plan for the area in question. The legislative purpose—the public policy involved—is stated in the title of the ordinance: "An ordinance pertaining to the establishment and changes in one-way street patterns in the Shaw Neighborhood area and authorizing the Director of Streets to install barricades to effect the closing and/or diverting of traffic at certain intersections * * *." The implementation of the plan requires as a practical matter that the flow of traffic be changed and passage of traffic prevented at the designated places where the barricades are erected. This necessarily changes the habit patterns of all motorists customarily using these streets, especially the residents of the Shaw District living nearby. Personal inconvenience inevitably results. Some rerouting or circuity of routing is involved. In no case, however, is it demonstrated that any motorist, resident or nonresident of Shaw District, has been deprived of access to any point in the area covered by the plan, or for that matter to any area, public street or highway in the city.

■ The residents of Shaw District are entitled to reasonable access to the general system of streets, see *Wilson v. Kansas City,* 162 S.W.2d 802 (Mo.1942), but plaintiffs have not shown that they have been deprived of this right, or that they have suffered inconvenience or damages different in kind (although perhaps different in degree) from that suffered by the general public. The barricades affect all of the traveling public in the same manner. It is generally recognized that under a proper delegation of authority a city has the power to promulgate or enforce traffic regulations

in the general public interest and to install regulatory devices which merely impose some circuity of route, even though they interfere to some extent with access or compel circuity of route. Anno: Abutter's Access-Traffic Regulation, 73 A.L.R.2d 689, 692. While none of the plaintiffs claims to be an abutter, even an abutter's right to access is subject to reasonable restrictions under the police power in protecting the public and facilitating traffic, and does not include the right to travel in any particular direction, or upon any particular part of the public highway right of way, or to have the traffic move in the same direction or to be protected against a diversion of traffic. *State ex rel. Highway Commission v. Meier*, 388 S.W.2d 855 (Mo.banc 1965). Neither an abutter, *Kansas City v. Berkshire Lumber Co.*, 393 S.W.2d 470 (Mo.1965), nor a resident of an improvement district (whose rights are no greater than those of an abutter), can complain of street improvements that facilitate travel over the streets. He must anticipate that improvements will be made and that changes in the mode of travel will occur, and adapt to these changes. The barricades are not shown to be "obstructions * * * that hinder or interfere with travel or traffic" on the streets, within the meaning of § 229.030, taken in conjunction with §§ 82.190 and 304.120. On the contrary, the barricades appear to be designed to facilitate orderly travel through the Shaw Neighborhood pursuant to an overall traffic control program calculated to enure to the benefit of the traveling public. The inconvenience suffered by plaintiffs is not actionable. See and compare *Rude v. City of St. Louis*, 93 Mo. 408, 6 S.W. 257 (1887). The circuit court did not err in finding that the ordinance does not violate the statute.

■ The next question is whether in erecting these barricades the city exceeded the power granted to it by § 304.120. The authority to make rules of the road and regulate traffic necessarily carries with it the authority to implement that power by erecting or installing tangible, physical devices to inform and warn the traveling public of the existence of such rules and regulations and to guide and direct the public in complying therewith. Such physical devices may take the form of signs, insignia, arrows, barrels, posts, islands, barricades, etc. A barricade is a "traffic control device" within the definition contained in § 820.150, Rev.Code City of St. Louis: "All signs, signals, markings and devices placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning or guiding traffic." The circuit court did not err in failing to find that the barricades were in excess of the city's authority under § 304.120.

Appellant's separately stated third and fourth points are that the court erred in finding that § 82.190 conferred upon the city the power to erect barricades upon its public streets; that this section must be construed in the light of § 71.010; that when so construed, the city's authority is limited to the regulation of traffic and does not extend to the elimination of traffic or the obstruction of the public roads contrary to § 229.030, and therefore the court erred in failing to apply § 71.010 and in failing to find that the ordinance conflicts with § 229.030. These points are essentially the same as the points previously asserted. Our previous analysis demonstrates that there is no lack of conformance between the ordinance and § 229.030.

Judgment affirmed.

SIMEONE, C. J., and ALDEN A. STOCKARD, Special Judge, concur.