Kenny Dean KNIERIM, Appellant,

v.

Ray L. JAMES (Now Richard King),
Director of Revenue, Respondent.

No. 65989.

Supreme Court of Missouri,
En Banc.

Oct. 9, 1984.

Theodore D. Barnes, Charles D. Wilson, Raytown, for appellant.

Matt Whitworth, Alfred A. Riederer, Robert Frager, Kansas City, for respondent.

PER CURIAM.

This case was transferred from the Court of Appeals, Western District, by this Court upon application of the Director of Revenue, to resolve the apparent conflict between the parties' interpretations of section 304.009 (Cum.Supp.1983).

The case has now been argued and submitted to this Court, and the Court adopts the opinion of the Honorable Harold L. Lowenstein in the court of appeals which resolves the issue in favor of Mr. Knierim.

Knierim filed a petition for review asking the Circuit Court of Jackson County to set aside four of eight points assessed against him and the resultant 30 day suspension of his drivers license under Section 302.304(2), RSMo (Cum.Supp.1983), by Ray James then the Director of Revenue. Section 302.311, RSMo 1978,[1] gives a driver who has been suspended by the director the right to appeal to the circuit court in the county of his residence for a de novo hearing where the director's action can be sustained, set aside or modified. The stipulated facts show that twice Knierim was stopped by Kansas City policemen and charged with speeding violations under a municipal ordinance.[2] He was driving in the city limits of Kansas City on Interstate 435 (a divided limited access highway) on both occasions—he pleaded guilty in the municipal division to exceeding the speed limit of 55, but not over 70 m.p.h., and paid fines. On appeal

---

1. All statutory references are to Revised Statutes of Missouri 1978 unless otherwise indicated.

2. Section 34.90 of the Traffic Code of Kansas City, Missouri, (1972) reads as follows:

No person shall operate a vehicle upon any through highway or street at a speed in excess of thirty miles per hour unless signs are posted designating another speed limit. All through highways or streets shall have maximum speed limit signs posted thereon. It shall be unlawful for any person to operate a vehicle in excess of the maximum posted speed limit.

Knierim basically alleges the state, *i.e.* the director of revenue, had no right to assess two points for each conviction under Section 302.302 (Cum.Supp.1983) since Section 304.009 (Cum.Supp.1983) sets the speed limit on I–435 at 55 m.p.h. He says that since the speed limit was set by the state but not specifically set by Kansas City Ordinance, 304.009 controls and he should not have received points for a municipal speeding violation.[3]

It is conceded the state set speed limit on this highway is 55 m.p.h., and under Section 304.009 no points could be assessed for these violations which were under 70 m.p.h. There is no contention the city made a request to set a lower limit under Section 304.012. The problem of seeming unfairness arises in that Kansas City has copied or duplicated the state's limit and the director seeks to impose points for the violations under Section 302.302 which allows two points to be assessed for a municipal ordinance violation.

The circuit court denied relief sought by Knierim and upheld the director's action. The standard of review is under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and Rule 73.01. Knierim says the exception of 304.009 applies only when the speed limit on a controlled access interstate highway is set at a speed by the municipality at *less* than that by the state. He relies on Sections 304.012 and 304.009 being read together to reach this conclusion. His alternative argument that cities cannot regulate the speed on controlled access highways within their boundaries where the limit is already set by state law will not be addressed.

■ The sole issue in this case is whether the state may assess points for an ordinance speeding violation on a controlled or divided limited access highway, where the city has adopted a general ordinance *duplicating* the speed set by state statute.

The stipulated facts in this case do not say whether the city or the state posted or set the limits in question, but merely say speed limit on this interstate highway was a "state speed limit, that being 55 m.p.h.— and not a violation of a speed limit specifically set 'by ordinance of any political subdivision of the state.'" The stipulation says that Knierim pleaded guilty to an ordinance of "... exceeding the posted speed limit and that posted speed limit was set by

---

3. Section 304.009, RSMo (Cum.Supp.1983), provides in pertinent part:

1. The uniform maximum speed limit upon the roads and highways of this state shall be fifty-five miles per hour.

2. The provisions of this section shall not be construed so as to alter any speed limit set below fifty-five miles per hour by state statute, or ordinance of any political subdivision of the state. Violations of the speed limit set by this section shall not accumulate points until and unless such speed exceeds those maximums set by other state statute, or by ordinance of any political subdivision of the state. The provisions of this section shall in no way be construed to repeal such maximum speed limits set by other state statutes, or ordinances of any political subdivision of this state.

Section 304.010, RSMo (Cum.Supp.1983), provides in pertinent part:

2. Except as otherwise provided by law no truck registered for a gross weight of more than twelve thousand pounds shall be operated at any time in excess of sixty miles per hour, and no other vehicle shall be operated in excess of:

(1) Seventy miles per hour on any divided highway designated and marked as a federal route or any state-maintained highway designated as suitable for and marked by the state highways and transportation commission with appropriate speed limit signs, or, when lighted lamps are not required by law, on any other highway designated and marked as a federal route.

Section 304.012, RSMo (Cum.Supp.1983), reads as follows:

1. Notwithstanding any speed limits to the contrary, in operating a motor vehicle on a divided limited access state highway, through an incorporated area, the same may be driven at the speed provided by law outside of such incorporated areas, except at intersections or approaching or leaving intersections, where traffic is at the time entering or leaving said highway, or in areas where there is a congestion of traffic, at which said places, said rate of speed shall not be in excess of fifty-five miles per hour; provided, however, that the municipality within which such highway is located may with the approval of the state highways and transportation commission establish a maximum speed of less than fifty-five miles per hour when necessary for the safe and efficient movement of traffic.

state statute, and specifically Section 304.-009."

As was the situation in *Rudd v. David,* 444 S.W.2d 457, 458–59 (Mo.1969) Knierim does not question the fact the records of his guilty pleas to the moving charges were properly forwarded to the director. There is no statutory authority for the director to seine through municipal speeding violations and, as appellant suggests, to not assess points if the violations occurred on roads also regulated by state speed laws. Instead, the state argues the director must record the points as the convictions come to him, "and once the specified number of points are accumulated the Director has no discretion." *Rudd, supra,* at 459.

Certain other statutes are relevant to the issue presented. Section 302.225.1 (Cum. Supp.1983) provides for municipal courts to forward to the highway patrol records of convictions of ordinance moving violations. "The record of all convictions involving the assessment of points as provided in Section 302.302 shall be forwarded by the highway patrol ... to the director of revenue." Paragraph 3 of Section 302.225 states no municipal judge or municipal official shall have the power to revoke a drivers license. Section 302.302, *supra,* sets out the point system the director is to use relating to suspensions and revocations. Three points are assessed for "state law" speeding violations, and two points for violations of "municipal ordinances." This section states that an act that constitutes both state and municipal violations may carry points for either, but not both.

Here the state has set the speed limit on sections of I–435, while the city, by blanket reference to a speed set by the state, has said "me too." It would be anomalous to allow the director to assess points for a municipal violation which merely duplicates by reference the state limit, and then to disregard the other portion of state law that effectively prohibits points on this type of road in unincorporated areas.

*The holding* of this case is limited to the situation where a city blanketly adopts the state speed limit on a controlled access highway within its boundaries. According to state law no points may be assessed on any such highways between 55 and 70 m.p.h. Because the director has the ultimate power to assess points and to suspend licenses for accumulated points, this decision must also weigh the fact that there is no authority or mechanism provided for the director to peruse the records of convictions sent to him to determine whether he should assess points. Nonetheless under these facts no points can be charged by the state, through the director, for this municipal violation. Section 304.009 does not allow, when read with 304.010, points until the speed exceeds that set by law or ordinance. Section 304.009 sets the speed here at 55. Section 304.012 relating to divided limited access highways through incorporated areas allows a municipality to set a speed lower than the state law or state-set speed only after state approval for safety reasons or for efficient movement of traffic. Construing the statutes in light of the limited issue of this case results in the conclusion that the four points assessed against Knierim were done so incorrectly and they must be removed from his driving record. Section 304.009 is an exemption here to the imposition of points under Section 302.302. *Cf. Merrigan v. Spradling,* 564 S.W.2d 615, 617 (Mo.App.1978). The result here does not impinge upon nor cover issues contemplated under Section 304.-120 which allows municipalities the power to establish reasonable speed regulations within their limits, nor Section 71.010 which requires cities to confine and restrict jurisdiction and their ordinances to be in conformity to state law. *See State ex rel. Schmitz v. City of St. Louis,* 551 S.W.2d 848 (Mo.App.1977) (where the city's action putting up barricades to control traffic in the Shaw District of St. Louis was upheld). This case does not involve the power of the city by ordinance to control speeds, but rather the ability of the director to assess points for certain municipal speeding violations.

■ Even though the issuance of a drivers license amounts to no more than a personal privilege, once granted it may not be revoked arbitrarily, "but only in the

manner and on the grounds provided by law[.]" *City of St. Louis v. Mosier,* 223 S.W.2d 117, 119 (Mo.App.1949). *See also Barbieri v. Morris,* 315 S.W.2d 711, 713 (Mo.1958). Other than the general statutory language allowing the director to assess points for municipal speeding violations, no statutory authority exists to assess points here because of the specific statutory exemption against assessing points on this type of highway for speeding violations between 55 and 70 m.p.h.

Unless and until the state legislature alters the existing statutes (.009 and .010) to allow assessment of points for violations on state limited access highways within city boundaries, points will not be allowed to be assessed when the city ordinance violated duplicates or concurs with the state set limit. In this case the judgment stands upon an erroneous declaration that existing law as applied to the facts of this case allow the assessment of points. The judgment of the trial court is reversed and this cause remanded with directions to enter an order calling for the director of revenue to set aside the four points in question and the resultant suspension against Knierim.

All concur.