Thomas Eugene MEYER, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. WD 50677.

Missouri Court of Appeals,
Western District.

Nov. 14, 1995.

Jeffrey S. Eastman, Keleher & Eastman, Gladstone, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Charles L. Gooch, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for respondent.

Before BERREY, P.J., and ULRICH and ELLIS, JJ.

ELLIS, Judge.

Thomas Eugene Meyer appeals the order of the Jackson County Circuit Court sustaining a 90–day suspension of his driving privilege by the Director of Revenue ("Director"). The judgment is reversed.

On or about October 28, 1994, Meyer received notice from the Director that his driver's license (a commercial driver's license) would be suspended as a result of excessive point accumulation pursuant to §§ 302.302 and 302.304.[1] The Director had assessed Meyer three points for speeding in Nevada on June 21, 1993, two points for speeding in Arkansas on April 13, 1994, and three points for speeding in Mississippi on October 19, 1994. Consequently, he had received eight points within an eighteen month period, making his license subject to suspension under § 302.304.2. Meyer timely filed his appeal of the suspension in the Jackson County Circuit Court pursuant to § 302.311.

The case was submitted to the court on January 27, 1995. Neither party submitted testimonial evidence. Meyer presented to the court what he designated a "Motion in Limine" objecting to the Director's submission of Exhibit A, which consisted of an affidavit with records regarding Meyer's out-of-state speeding convictions. The trial court denied the motion and admitted the records. After reviewing the records and statements of counsel, the trial court affirmed the sus-

---

1. All statutory references are to RSMo 1994.

pension of Meyer's driver's license. Meyer appeals this judgment.

In his first point on appeal, Meyer contends the trial court erred in relying on the records of his out-of-state speeding violations because they do not fall under the business records exception to hearsay. He claims the affidavit contained documentation not regularly maintained by the Director in the regular course of business because it contained records of foreign jurisdictions and an affidavit of explanation.

The exhibit about which Meyer complains consisted of Meyer's driving record, copies of the tickets he received in Mississippi and Arkansas showing conviction or guilty plea entries and dates, and a copy of a computer printout of Meyer's driving record in Nevada. The exhibit also contained two affidavits. The first affidavit (which was the first page of the exhibit), was a notarized affidavit of Daphne Koepp, the records custodian for the Missouri Department of Revenue, Drivers License Bureau. The second affidavit, made by Robert Ordway, the Operations Manager of the Missouri Department of Revenue, Drivers License Bureau, explained the Nevada computer printout.

Koepp's affidavit stated the attached records were kept by the Department in the regular course of business. Its form and content is identical to the language set forth in § 490.692. The affidavit also contained a certification of the attached records pursuant to § 302.312. If it were not for the Nevada computer printout and the second affidavit, which purports to explain it, Meyer's point would be totally devoid of merit. In *Schrimpf v. Director of Revenue*, 889 S.W.2d 171, 172–73 (Mo.App.1994), the Director offered an exhibit consisting of Schrimpf's driving record and copies of two out-of-state traffic convictions which had been sent to the Missouri Department of Revenue. These out-of-state records were similar to the Mississippi and Arkansas records in the case at bar. Also, notarized affidavits of the Department's records custodian, similar to Koepp's affidavit in the case at bar, were attached to the exhibit. We held in *Schrimpf* that because the records custodian's affidavit, which contained language tracking § 490.692, was

attached to the records, they were properly admitted as business records. Thus, *Schrimpf* is dispositive unless the Nevada computer printout and the Ordway affidavit do not constitute business records under the provisions of The Uniform Business Records as Evidence Law, § 490.660, *et seq.*

Since we have already held, in *Schrimpf,* that copies of out-of-state convictions received by the Director qualify as business records under § 490.680, it seems to logically follow that the computer printout of the Nevada information is also a business record for purposes of § 490.680. However, the Ordway affidavit, on the other hand, appears to be testimonial in nature. It does not recite that it is prepared in the regular course of business or, if so, for what purpose, but to the contrary, declares that the "electronic conviction report . . . is maintained . . . in the regular course of business . . . ," thereby suggesting that the affidavit itself is not prepared or maintained in the regular course of business. Nevertheless, we need not decide the issue because, even if we assume *arguendo,* that all of Exhibit A, including the Ordway affidavit, was properly admitted, we find the trial court's judgment must be reversed because there was insufficient evidence to sustain the suspension.

▮ In his second point, Meyer contends there was insufficient competent evidence at trial regarding the appropriate number of points to be assessed for each of the out-of-state convictions (particularly the Nevada and Arkansas convictions) and therefore the Director failed to prove his suspension was proper. In considering this point, we are mindful that our standard of review for this court tried case prescribes that the judgment be affirmed unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the court erroneously declared or misapplied the law. *Kimber v. Director of Revenue,* 817 S.W.2d 627, 629 (Mo.App.1991).

▮ Section 302.160 provides:
When the director of revenue receives notice of a conviction in another state . . . which, if committed in this state, would result in the assessment of points, he is

authorized to assess the points and suspend or revoke the operating privilege when the accumulated points so require as provided in Section 302.304.

Under § 302.304.2, the Director shall suspend the driver's license of any person who has accumulated eight points in eighteen months. Speeding in violation of state law is to be assessed 3 points, whereas speeding in violation of county or municipal ordinance is to be assessed 2 points. § 302.302.1. Finally, § 304.009 provides an exemption to the imposition of points under § 302.302. *Schrimpf,* 889 S.W.2d at 174. Under § 304.009 [2] (read with § 304.010 [3]), except for trucks weighing more than twenty-four thousand pounds, no points may be assessed for speeding convictions on certain highways between 55 and 70 m.p.h. *Schrimpf,* 889 S.W.2d at 174; *Knierim v. James,* 677 S.W.2d 322, 324 (Mo. banc 1984). This is true even where a municipal ordinance has duplicated the state speed limits provided under § 304.010. *Knierim,* 677 S.W.2d at 325.

■ Meyer received three points for his Nevada conviction and two points for his Arkansas conviction. Meyer contends the records submitted by the Director do not establish that the proper amount of points were assessed for those convictions. He also asserts that the evidence is insufficient to establish that the § 304.009 exemption does not apply.

In *Schrimpf,* Judge Hanna, writing for this court, stated:

[I]n order to ascertain whether points would be assessed in Missouri for an out-of-state violation, it is necessary to determine whether the [§ 304.009] exemption applies. In order to determine whether the exemption applies, it is essential to know the type of roadway and the type of vehicle involved.

*Schrimpf,* 889 S.W.2d at 174. Meyer asserts that the computer printout of his Nevada driving record shows neither the type of road nor the type of vehicle involved when he received that citation, and hence there was insufficient evidence at trial to determine whether the § 304.009 exemption applies.

Because of codes and abbreviations, the Nevada computer printout is, on its face, essentially meaningless. However, as indicated previously, we are assuming, without deciding and solely for the sake of argument, that the Ordway affidavit explaining the printout was admissible. The Ordway affidavit tells us that the Nevada report is a computer-generated transmission by the State of Nevada Department of Motor Vehicle & Public Safety, which was received by the Missouri Department of Revenue via the national Commercial Driver's License Information System ("CDLIS"). As defined by

---

**2.** Section 304.009 states:

1. The uniform maximum speed limit upon the roads and highways of this state which are not part of the interstate system of highways outside urbanized areas of fifty thousand population or more shall be fifty-five miles per hour. The uniform maximum speed limit upon all highways of this state which are part of the interstate system of highways outside urbanized areas of fifty thousand population or more shall be sixty-five miles per hour for vehicles other than trucks registered for a gross weight of more than twenty-four thousand pounds. The uniform maximum speed limit upon all highways of this state which are part of the interstate system of highways outside urbanized areas of fifty thousand population or more shall be sixty miles per hour for all trucks registered for a gross weight of more than twenty-four thousand pounds.
2. The provisions of this section shall not be construed so as to alter any speed limit set below fifty-five miles per hour by state statute, or ordinance of any political subdivision of the state. Violations of the speed limit set by this section shall not accumulate points until and unless such speed exceeds those maximums set by other state statute, or by ordinance of any political subdivision of the state.

**3.** Section 304.010.2 states:

Except as otherwise provided by law, no truck registered for a gross weight of more than *twenty-four thousand pounds shall be operated* at any time in excess of sixty miles per hour, and no other vehicle shall be operated in excess of:
(1) Seventy miles per hour on any divided highway designated and marked as a federal route or any state-maintained highway designated as suitable for and marked by the state highways and transportation commission with appropriate speed limit signs, or, when lighted lamps are not required by law, on any other highway designated and marked as a *federal route.*

§ 302.700.2(5), the CDLIS is "the information system established ... to serve as a clearinghouse for locating information related to the licensing and identification of commercial motor vehicle drivers." Relying on this information, the Director maintains that because only traffic violations involving commercial vehicles are reported through the CDLIS, the computer printout necessarily establishes Meyer was driving a commercial vehicle when he received that citation. Thus, according to the Director, the type of vehicle has been established. We will assume, *arguendo*, that this is true.

The Director then asserts that because Meyer was convicted of speeding in a commercial vehicle, the *type* of roadway is irrelevant.[4] This contention is premised on the fact that, because Meyer was driving a commercial vehicle, the Uniform Commercial Driver's License Act, §§ 302.700—302.780, applies. Under the Act, a "commercial motor vehicle" is defined as:

[A] motor vehicle designed or used to transport passengers or property:

(a) If the vehicle has a gross combination weight rating of twenty-six thousand one or more pounds inclusive of a towed unit which has a gross vehicle weight of ten thousand one pounds or more;

(b) If the vehicle has a gross vehicle weight rating of twenty-six thousand one or more pounds or such lesser rating as determined by federal regulation.

The Director then reasons that, since Meyer was driving a commercial vehicle, which by definition weighs more than twenty-six thousand pounds, the §§ 304.009 exemption as applied in *Schrimpf* and *Knierim* does not apply. This is because vehicles weighing more than twenty-four thousand pounds are not included within that exemption. As applied to these large trucks, the exemption would apply only to speeds between 55 m.p.h. and 60 m.p.h. rather than to speeds between 55 m.p.h. and 70 m.p.h. § 304.010.[5] Thus, according to the Director, the type of roadway (which would be relevant for smaller vehicles) is irrelevant here.

Having reached this conclusion, the Director continues the argument by submitting that the Nevada report established Meyer was driving over 60 m.p.h. because it shows he was convicted of an "excessive speeding" violation. The Director deduces this fact because "excessive speeding" is one example given in the definition of "serious traffic violation" in § 302.700.2(23) and is defined by regulation as "any single offense for any speed of 15 miles per hour or more above the posted speed limit." 49 C.F.R. § 383.5.

While imaginative, the Director's argument fails. To accept this contention, we would have to infer that because Meyer was convicted of "excessive speeding," he must have been driving over 60 m.p.h., thereby excluding him from the § 304.009 exemption. However, to make such an inference, we would first have to infer that he was driving on a highway or other roadway with a speed limit greater than 45 m.p.h. There is no evidence in the record to support either inference. "Excessive speeding," by definition, is traveling "15 miles per hour or more above the posted speed limit." 49 C.F.R. § 383.5. Thus, "excessive speeding" would include driving 55 m.p.h. in a 40 m.p.h. zone, 50 m.p.h. in a 35 m.p.h. zone, as well as any other speed 15 miles per hour or more above a posted limit. Obviously, then, conviction for "excessive speeding" does not imply a speed in excess of 60 miles per hour. Therefore, it cannot be inferred that the exemption in § 304.009 is inapplicable.

■ Neither the Nevada computer printout nor the Ordway affidavit establish the

---

4. The fact that this case involves a commercial vehicle does distinguish it from *Knierim* and *Schrimpf* on this point as neither of those drivers was driving a commercial vehicle.

5. Section 304.010.2 states:

Except as otherwise provided by law, no truck registered for a gross weight of more than twenty-four thousand pounds shall be operated at any time in excess of sixty miles per hour
. . .

Relying on this section, the Director alleges:
Hence, points may be assessed for a speeding violation committed in a vehicle with a gross vehicle weight of more than twenty-four thousand pounds for a speed of sixty-one miles per hour or more, on *any* type of highway, therefore, the type of highway is irrelevant, as applied to this case.

speed upon which Meyer's conviction was based or the speed limit which he violated. Moreover, they do not identify whether he violated state law or a municipal or county ordinance. Therefore, not only can we not determine whether the exemption in § 304.009 is applicable, even if it were not, it could not be ascertained whether three points or two should be assessed for the violation under § 302.302.1. Since Meyer's suspension was based on having accumulated eight points within eighteen months, it was crucial for the Director to establish that assessment of three points for the Nevada violation was correct. If it was a two point violation, he would only have seven points and would not be subject to suspension.

■ Not only does the Director's evidence fail with respect to the Nevada conviction, it is also deficient with respect to the Arkansas charge. The Arkansas ticket shows Meyer was driving 65 m.p.h. in a 55 m.p.h. zone on Highway 67, a rural, nondivided, four-lane highway. The ticket describes Meyer's vehicle as a 1990 "KW." As the Director suggests, it can reasonably be assumed this means Meyer was driving a 1990 Kenworth truck. However, the Director has offered no evidence that a 1990 Kenworth truck has a gross vehicle weight of twenty-four thousand pounds or more. Furthermore, this conviction was not reported through the CDLIS. Therefore, we cannot assume, even for the sake of argument, as we did with respect to the Nevada conviction, that Meyer was driving a commercial vehicle. As a result, we cannot infer a 1990 KW is a commercial vehicle weighing more than twenty-four thousand pounds. Since we cannot make that assumption, the exemption provided for all other vehicles under §§ 304.009 and 304.010 may apply to the Arkansas conviction because the ticket showed Meyer was driving between 55 m.p.h. and 70 m.p.h.

■ The Director alleges that even if that were the case, the ticket shows the "violation appears to have been committed at or about 1:00 a.m." The Director asserts that if the violation occurs after dark, the type of vehicle is irrelevant in determining whether § 304.009 applies. The Director cites no authority for this proposition, and we are not sure how she reaches this conclusion. Meyer was convicted of traveling 65 miles per hour in a 55 mile per hour zone. Under § 304.010.2(3), the speed limit after dark would be 65 miles per hour on undivided federal routes and designated state maintained highways. We may take judicial notice of geographical facts, including official highway maps. *Schrimpf*, 889 S.W.2d at 174. In doing so, we observe that Highway 67 in Arkansas is a designated United States route, as its continuation is in Missouri. Therefore, we fail to see the basis of the Director's argument. Nevertheless, even if the Director is correct, we have examined the copy of the Arkansas ticket submitted to the trial court, and the time of the offense is illegible. Moreover, under the section on the ticket labeled "Conditions that Increased Seriousness of Violation," there is a subsection labeled "Darkness" and a block in which to designate "Night." The box is not marked. Thus, even if we accept, for the sake of argument, the Director's unexplained theory that if the violation occurs after dark, a conviction for 65 miles per hour in a 55 mile per zone is point assessable, the record fails to establish the Arkansas violation occurred after dark.

For the foregoing reasons, we conclude that the Director failed to present sufficient evidence to establish that her assessment of points for the Nevada and Arkansas convictions was proper, and that the resulting suspension of Meyer's license was authorized. Therefore, the judgment of the trial court is reversed, and the Director is ordered to reinstate Meyer's license.

All concur.